IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
6/17/22
BY HBC
DEPUTY CLERK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNTS "100072244026249" AND "nikk.leclair.9" THAT ARE STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 2:22-mj-73 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Eric Brimo, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with two Facebook accounts that are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession pertaining to the subscriber(s) or customer(s) associated with the accounts.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2016. Prior to working for the ATF, I was a Special Agent with the U.S. Department of State, Diplomatic Security Service, since 2010. I am familiar with federal laws relating to firearms and controlled substances, have been trained in the investigation of violations of said laws, and have participated in such investigations. During my

law enforcement career, I have worked on numerous investigations involving unlawful firearm possession, firearms trafficking, and unlawful possession of controlled substances.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement investigators and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Where I describe a statement, it is described in substance, not verbatim.

4. Based on the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) have been committed by Nichole LeCLAIR and Justin LLANO a.k.a. "TJ." There is also probable cause to search the account information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. In May 2022, I obtained search warrants from the Court to search two residences in Washington, VT following a months-long drug investigation: 7 Linnea Ln. in Washington, VT, the residence of Nichole LeCLAIR, and 2409 VT Rt 110, in Washington, VT, the residence of Christopher EMMONS. I have attached true and correct copies of the May 3, 2022 search warrant affidavit for 7 Linnea Ln. in Washington, VT as well as the May 9, 2022 search warrant affidavit for 2409 VT Rt 110, in Washington, VT, as Exhibit 1 and Exhibit 2, respectively, and hereby incorporate those affidavits into this application.

6. During the course of this investigation, the Vermont Drug Task Force (VDTF) developed a confidential informant (CI) who advised that both LeCLAIR and EMMONS were allowing drug dealers to stay at their respective residences. Specifically, the CI advised they knew Justin LLANO (known to them as "TJ") was staying at EMMONS' residence and was

selling drugs from there. When asked how the CI could communicate with the individuals to obtain drugs, the CI advised they used their Facebook account to contact LLANO at a Facebook account labelled "John Dough" and to contact LeCLAIR at a Facebook account labelled "Nikk LeClair." The CI advised they knew of these two Facebook accounts because they previously used the accounts to communicate with LLANO and LeCLAIR to purchase drugs, prior to the CI's cooperation with the VDTF.

7. I spoke with Det. Christopher Quesnel, the lead investigator for VDTF on the case. Det. Quesnel advised me that he found the "John Dough" Facebook account to have an address of https://www.facebook.com/profile.php?id=100072244026249 and the "Nikk LeClair" Facebook account to have an address of https://www.facebook.com/nikk.leclair.9. I have viewed the "John Dough" account and observed a photograph posted on September 21, 2021, of two people, one of whom I recognized as LLANO. Det. Quesnel provided me with a screenshot of the "Nikk LeClair" account that included a profile photograph, which I recognized to be LeCLAIR with another individual.

8. On or about April 27, 2022, law enforcement submitted preservation requests concerning the above-described Facebooks accounts. Subsequent to that date, the "Nikk LeClair" account became no longer publicly viewable.

9. As described in Exhibits 1 and 2, Det. Quesnel used the CI to make several controlled purchases from both residences. During these controlled purchases, VDTF were able to buy heroin/fentanyl and cocaine base from the residences. At times, as described in Exhibits 1 and 2, the CI used the above-described Facebook accounts to arrange drug purchases.

10. On May 13, 2022, ATF executed the two search warrants at the two residences. During the search of LeCLAIR's residence, investigators located suspected fentanyl, suspected

3

cocaine base, and a semi-automatic pistol. During the search of EMMONS' residence, investigators located suspected cocaine base, suspected fentanyl, and 14 firearms.

    11.    Following the search warrants, I obtained a series of photographs taken from a digital game camera that was placed inside EMMONS' residence at 2409 VT Rt 110, in Washington, VT. The photographs depict what appears to be several drug transactions involving LLANO, who is identifiable in the photographs, along with other individuals. Each photograph has a date and time stamp on them, the earliest of which is on January 13, 2022; I have no reason to doubt the approximate accuracy of the dates and times. As such, I am requesting data from the Facebook accounts from January 13, 2022, through May 16, 2022, when LLANO voluntarily surrendered at the U.S. District Court in Burlington, VT.

    12.    As indicated in paragraph 20(k) in Exhibits 1 and 2, based on my training, experience, and participation in other controlled substances investigations, I know that drug traffickers commonly have in their possession (that is on their persons, in their vehicles, and at their residences and/or their businesses), ammunition and firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, silencers and other weapons; that said ammunition and firearms are used to protect and secure a drug trafficker's property. Specific to this investigation, individuals inside the residence have been observed in possession of firearms. Thus, there is reason to believe the data from the above-described Facebook accounts may also contain information related to the unlawful possession of firearms and/or ammunition.

    13.    Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

14. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Some data may be omitted, and the data are not vetted for accuracy, so a user can provide false information. Each Facebook user is assigned a user identification number and can choose a username.

15. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their

whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

18. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and they can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

19. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and it also retains transactional records related to voice and video chats such as the date and time of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

20. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as

webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

22. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

24. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

25. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

26. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

27. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

28.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of

the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

32. Based on the foregoing, I request that the Court issue the proposed search warrant.

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a District Court of the United States that has jurisdiction over the offense being investigated.

Dated at Burlington, in the District of Vermont, this 17th day of June 2022.

Respectfully submitted,

*[signature]*

Eric Brimo
Special Agent, ATF

Subscribed and sworn to before me on  June 17 , 2022

*[signature]*

HON. KEVIN J. DOYLE
UNITED STATES MAGISTRATE JUDGE